Nos. 19-15072, 19-15118, 19-15150

# In the United States Court of Appeals for the Ninth Circuit

THE STATE OF CALIFORNIA, *et al.*,

*Plaintiffs-Appellees*,

*v.*

ALEX M. AZAR II in his official capacity as Secretary of the U.S. Department of Health and Human Services, *et al.*,

*Defendants-Appellants*,

and

THE LITTLE SISTERS OF THE POOR JEANNE JUGAN RESIDENCE; MARCH FOR LIFE EDUCATION AND DEFENSE FUND,

*Intervenors-Defendants-Appellants*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

**SUPPLEMENTAL BRIEF OF INTERVENOR-DEFENDANT-APPELLANT THE LITTLE SISTERS OF THE POOR JEANNE JUGAN RESIDENCE**

Mark Rienzi
Eric C. Rassbach
Lori H. Windham
Diana M. Verm
Chris Pagliarella
THE BECKET FUND FOR RELIGIOUS LIBERTY
1200 New Hampshire Ave. NW, Ste. 700
Washington, DC 20036
(202) 955-0095


# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................... iv

INTRODUCTION ................................................................................. 1

ARGUMENT ........................................................................................ 2

   I. *Little Sisters* addressed the questions at issue in this appeal. ................................................................. 2

      A. *Little Sisters* held that the Affordable Care Act does not require contraceptive coverage and does permit exemptions. ................................................................ 2

      B. *Little Sisters* invalidates the district court's RFRA analysis. ................................................................ 3

      C. *Little Sisters* invalidates any arguments remaining on appeal. ............................................................ 4

   II. The district court should apply *Little Sisters* to any remaining questions in the first instance. ........................ 7

      A. *Little Sisters* jeopardizes the States' Article III standing. ................................................................ 8

      B. In light of *Little Sisters*, the entire contraceptive mandate violates the nondelegation doctrine. .................... 9

      C. The mandate is unconstitutional under the First Amendment as applied to religious objectors. ................ 11

      D. All relevant questions would benefit from development in the district court. ........................................ 12

CONCLUSION ................................................................................... 12

CERTIFICATE OF COMPLIANCE .................................................... 14

CERTIFICATE OF SERVICE..............................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bostock v. Clayton Cty.*,
   140 S. Ct. 1731 (2020) ................................................................................... 6

*California v. Health & Human Servs.*,
   351 F. Supp. 3d 1267 (N.D. Cal. 2019) ..................................... *passim*

*California v. Health & Human Servs.*,
   941 F.3d 410 (9th Cir. 2019) ..................................................... *passim*

*DeOtte v. Azar*,
   393 F. Supp. 3d 490 (N.D. Tex. 2019) ............................................. 9

*Gundy v. United States*,
   139 S. Ct. 2116 (2019) .................................................................. 10

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
   140 S. Ct. 2367 (2020) ............................................................ *passim*

*Our Lady of Guadalupe Sch. v. Morrissey-Berru*,
   140 S. Ct. 2049 (2020) ................................................................. 11

*Paul v. United States*,
   140 S. Ct. 342 (2019) .................................................................. 10

*Pennsylvania v. President*,
   No. 17-3752 (3d Cir. Aug. 20, 2020) ............................................. 7

**Other Authorities**

83 Fed. Reg. 57,536 (Nov. 15, 2018) .................................................... 9

## INTRODUCTION

In response to this Court's request for supplemental briefing on the propriety of remand to the district court, the Little Sisters respectfully suggest that this Court should reverse and remand.

This case is on appeal from the district court's entry of a preliminary injunction. That decision was based on the trial court's view that the Affordable Care Act did not permit the federal government to create exemptions to preventive care requirements, and that the Religious Freedom Restoration Act could not justify a religious exemption. This Court affirmed the district court's order on the same grounds.

The Supreme Court has now upended that understanding of the law. In *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367 (2020), the Court held that the ACA grants the agencies "virtually unbridled discretion" via a "capacious grant of authority" that is "unchecked" when granting exemptions from its own rules. The Court further explained that the agencies were affirmatively required to consider RFRA, that they "must accept" complicity-based objections of religious employers, and that they had been "directed" by the Court to accommodate those employers. The Court reversed the Third Circuit's decision affirming a preliminary injunction, and granted, vacated, and remanded this Court's decision affirming a preliminary injunction.

In response to *Little Sisters*, the Third Circuit has now reversed the Eastern District of Pennsylvania's preliminary injunction and remanded

1

that case to the district court to apply the Supreme Court's judgment in the first instance to any arguments that might remain. The same course is appropriate here. *Little Sisters* completely invalidates the ACA and RFRA reasoning upon which the district court's ruling was based. To the extent the States have any arguments they think salvageable after *Little Sisters*, they should be presented—along with any supporting facts—in the first instance to the district court and litigated there under the new standards set forth in *Little Sisters*. Such an approach is particularly appropriate because *Little Sisters* also highlighted additional Article III problems for the States, as well as additional constitutional infirmities of the mandate. All of these issues are best addressed in the first instance in the trial court, allowing for later review if necessary.

## ARGUMENT

### I. *Little Sisters* addressed the questions at issue in this appeal.

In *Little Sisters*, the Supreme Court held that the government had statutory authority to issue the religious exemption and that the regulations are "free from procedural defects." 140 S. Ct. at 2386. That decision entirely invalidated the reasoning behind the district court's order.

### A. *Little Sisters* held that the Affordable Care Act does not require contraceptive coverage and does permit exemptions.

The district court's order held that the ACA women's preventive care provision only allowed HRSA to specify "*what* 'additional preventive care

2

and screenings' . . . must be covered," not to exempt employers from covering those services. *California v. Health & Human Servs.*, 351 F. Supp. 3d 1267, 1285-86 (N.D. Cal. 2019) (emphasis in original) (citation omitted). This Court agreed. *California v. Health & Human Servs.*, 941 F.3d 410, 424-26 (9th Cir. 2019). The Supreme Court, however, held that "[o]n its face, . . . the [ACA] provision grants sweeping authority to HRSA to craft a set of standards defining the preventive care that applicable health plans must cover." *Little Sisters*, 140 S. Ct. at 2380. And the Court held that the statute's "capacious grant of authority" to HRSA "includ[es] the ability to identify and create exemptions from its own Guidelines." *Id.* The Court determined that it could not "impos[e] limits on an agency's discretion that are not supported by the text," including limitations on the exemptions HRSA chose to create. *Id.* at 2381. Indeed, the Court explained, "it was Congress, not the Departments, that declined to expressly require contraceptive coverage in the ACA itself." *Id.* at 2382.

**B. *Little Sisters* invalidates the district court's RFRA analysis.**

The district court held that the religious exemption was not required by RFRA, and that RFRA also did not even permit the exemption, because "the courts, not the agencies, are the arbiters of what the law and the Constitution require." 351 F. Supp. 3d at 1293. This Court agreed, holding that "the religious exemption operates in a manner fully at odds" with RFRA. *See, e.g.*, 941 F.3d at 427, 426-30. While the Supreme Court declined to apply strict scrutiny to determine whether RFRA

3

required the exemptions, it reiterated its prior decisions making it "abundantly clear that, under RFRA, the Departments must accept the sincerely held complicity-based objections of religious entities." *Little Sisters*, 140 S. Ct. at 2383.

Furthermore, the Court stated that not only was it "appropriate for the Departments to consider RFRA," it was required. *Id.* at 2383. The Court acknowledged that from the "face of the statute . . . the contraceptive mandate is capable of violating RFRA," since it does not explicitly exempt RFRA and the "regulations implementing the contraceptive mandate qualify as 'Federal law'" covered by RFRA. *Id.* The Court also explained that its previous decisions in *Hobby Lobby* and *Zubik* had found that the agencies "must accept," and had been "directed" to, "'accommodat[e]' the free exercise rights of those with complicity-based objections to the self-certification accommodation." *Id.* (citation omitted). Indeed, the *Little Sisters* Court could not "see how the Departments could promulgate rules consistent with these decisions if they did not overtly consider these entities' rights under RFRA." *Id.*

### C. *Little Sisters* **invalidates any arguments remaining on appeal.**

Given the Supreme Court's announcement of a new legal standard, the factual basis for the States' claims under that new standard must be developed in the district court in the first instance. The States gave less than four pages of briefing to their claim of arbitrariness, States' Br., Dkt.

4

72, and this Court did "not reach" that claim, 941 F.3d at 431. Following *Little Sisters,* however, the district court's tentative ruling that the regulations did not provide "a reasoned explanation . . . for disregarding facts and circumstances that underlay or were engendered by the prior policy" is no longer valid. 351 F. Supp. 3d at 1296 (citation omitted).

First, in finding the rules "free from procedural defects," *Little Sisters* made clear the agencies properly "'request[ed] and encourag[ed] public comments on all matters addressed' in the rules" and that the rules contained a sufficient "statement of their basis and purpose." 140 S. Ct. at 2386 (alterations in original).

Second, the district court's holding turned on its understanding that Congress had made women "statutorily entitled" to contraceptive coverage, creating "'serious reliance interests" for those who might lose coverage. 351 F. Supp. 3d at 1296. The States relied on the same view of the ACA in their scant briefing. Dkt. 72 at 22 ("millions of women nationwide rely on the Women's Health Amendment"). In *Little Sisters*, however, the Supreme Court directly rejected the notion that contraceptive coverage is a statutory entitlement. Further, the Court explicitly noted that any "policy concern" regarding the ability for women to receive contraceptives "cannot justify supplanting the [statutory] text's plain meaning." *Little Sisters*, 140 S. Ct. at 2381. The plain meaning being that "Congress[] . . . declined to expressly require contraceptive coverage in the ACA itself." *Id.* at 2382.

5

Third, the core of the district court's contrary holding was that the rules were unreasoned because the agencies based them in part "on new *legal* assertions" regarding RFRA's protections for religious objectors. 351 F. Supp. 3d at 1296. Now the Supreme Court has held that considering RFRA was not merely permissible, but mandatory for reasoned decision making.

The Court explained that its past "decisions all but instructed the Departments to consider RFRA going forward." *Little Sisters*, 140 S. Ct. at 2383. If the government had *not* considered and adapted to RFRA concerns, it "would certainly be susceptible to claims that the rules were arbitrary and capricious for failing to consider an important aspect of the problem." *Id.* at 2384; *see Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1754 (2020) (explaining that "RFRA operates as a kind of super statute, displacing the normal operation of other federal laws"). The Supreme Court's explication of both the ACA and RFRA thus eliminated the legal premises for the district court's analysis.

Third, even at the preliminary injunction stage, the district court recognized that adjudicating a challenge to the agencies' explanation would require further "develop[ment] [of the] relevant record" and "substantially greater detail" in the parties' legal arguments than had been presented when it ruled in January 2019. 351 F. Supp. 3d at 1296. Given the tentative nature of the district court's ruling at the preliminary injunction stage, and given the very significant barriers created by *Little*

6

*Sisters*, the parties should develop any remaining legal and factual disputes in the trial court in the first instance.

*Little Sisters* also undercuts any attempt to resurrect claims that the rules violate the Affordable Care Act in other ways. The States' prior arguments that the rules contradict other provisions of the ACA (Sections 1554 and 1557)—claims which have not yet been addressed by the district court or this Court—fail because "it is Congress, not the Departments, that has failed to provide . . . protection for contraceptive coverage" in the ACA. 140 S. Ct. at 2382.

In light of *Little Sisters*, the appropriate course here is to reverse the district court's injunction and remand for additional proceedings consistent with the Supreme Court's decision. That is what the Third Circuit has done in the Pennsylvania case, *see* Judgment Order, *Pennsylvania v. President*, No. 17-3752, (3d Cir. Aug. 20, 2020), ECF No. 390 (summarily "revers[ing]" grant of injunction and "remand[ing] to the District Court"), and that is the proper approach here.

## II. The district court should apply *Little Sisters* to any remaining questions in the first instance.

To the extent the States seek to press any additional arguments, the district court should be the first to evaluate those arguments in light of *Little Sisters* and apply the *Little Sisters* standard to the relevant facts. Any remaining arguments the States may choose to make suffer from

7

multiple additional fatal defects that follow from the legal standards announced in *Little Sisters* and other cases decided since the district court last ruled, including: (1) the States have not shown an Article III injury; (2) the contraceptive mandate in its entirety violates the nondelegation doctrine; and (3) the mandate violates the First Amendment as applied to religious objectors. If the States continue this case, the district court will need to grapple with these additional constitutional issues in the first instance.

### A. *Little Sisters* jeopardizes the States' Article III standing.

After the *Little Sisters* holding is applied to the facts in this case, the States may not be able to show any injury from the rules. Seven Justices agreed in *Little Sisters* that an exemption is permissible for sincere religious objectors to the "self-certification" system. 140 S. Ct. at 2382-84 (ACA alone "provided a basis for both exemptions" and failing to be "mindful of the RFRA concerns" could have rendered rules "arbitrary and capricious"); *id.* at 2398 (Kagan, J., concurring in judgment) (suggesting record would allow "exempt[ing] the Little Sisters and other still-objecting groups from the mandate" but perhaps not employers with no objection to self-certification). If the States try to argue that an "overbreadth" challenge remains available to them, they must demonstrate that such marginal overbreadth alone is likely to impose costs on the public fisc—a question not yet reached. *Id.* at 2399 (Kagan,

8

J., concurring in judgment).[1] And redress for the States' purported injuries has become even more remote due to *court*-imposed injunctions since briefing concluded. *See, e.g.*, *DeOtte v. Azar*, 393 F. Supp. 3d 490, 513 (N.D. Tex. 2019) (injunction exempting "[e]very current and future employer" with a sincere religious objection to complying with the mandate via the accommodation), *appeal docketed by denied intervenor*, No. 19-10754 (5th Cir.). If the case continues, the district court will need to consider in the first instance whether the States have standing and how their alleged harms can even be redressed in light of both *Little Sisters* and *DeOtte*.

### B. In light of *Little Sisters*, the entire contraceptive mandate violates the nondelegation doctrine.

The *Little Sisters* majority recognized the "sweeping authority" Congress delegated to HRSA to issue the mandate, without dictating what the standards "must contain, or how HRSA must go about creating them." *Little Sisters*, 140 S. Ct. at 2380. This, the Court noted, meant that HRSA had "virtually unbridled discretion" to implement the mandate.

---

[1] While best addressed by the district court in the first instance, this argument is also doubtful. The concurrence's suggestion that the exemption is available to "employers who had no religious objection to the status quo" conflicts with the Final Rule's text, which only provides an exemption "to the extent of the [entity's] objections." *Compare Little Sisters*, 140 S. Ct. at 2399 (Kagan, J., concurring) *with* Religious Exemptions and Accommodations for Coverage of Certain Preventative Services Under the Affordable Care Act, 83 Fed. Reg. 57,536, 57,537 (Nov. 15, 2018).

9

*Id.* The Court did not rule on the issue, since no party had yet raised a "constitutional challenge to the breadth of the delegation involved here," *id.* at 2382. Such a broad delegation, however, would be an impediment to any judicial order purporting to reinstate that mandate.

Since Congress delegated to HRSA "'unguided' and 'unchecked'" authority to issue the women's preventive care mandate, HRSA's issuance of the contraceptive mandate under this provision is invalid. *Gundy v. United States*, 139 S. Ct. 2116, 2123 (2019) (plurality). "The framers understood . . . that it would frustrate 'the system of government ordained by the Constitution' if Congress could merely announce vague aspirations and then assign others the responsibility of adopting legislation to realize its goals." *Id.* at 2133 (Gorsuch, J., dissenting); *see also Paul v. United States*, 140 S. Ct. 342 (2019) (Kavanaugh, J., statement respecting the denial of certiorari). ("[C]ongressional delegations to agencies of authority to decide major policy questions" would be impermissible "even if Congress expressly and specifically delegates that authority."). As the majority opinion noted in *Little Sisters*, the statute here does not "provide an exhaustive or illustrative list of the preventive care and screenings that must be included." 140 S. Ct. at 2380. Nor does it "set forth any criteria or standards to guide HRSA's selections," or "require that HRSA consult with or refrain from consulting with any party in the formulation of the guidelines." *Id.* Thus, since the delegation is invalid, the mandate is invalid, and the States lack

standing; this is another issue that merits additional development in the district court.

### C. The mandate is unconstitutional under the First Amendment as applied to religious objectors.

Due to intervening precedent, the States' arguments run afoul of the First Amendment. On the same day it decided *Little Sisters*, the Supreme Court recognized in another case that religious organizations have "autonomy" to choose to not retain employees engaged in behavior inconsistent with church teaching. All nine justices agreed with this basic proposition. *See Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2060 (2020) (describing a general "autonomy with respect to internal management decisions that are essential to the institution's central mission," of which the ministerial exception is a "component"); *id.* at 2072 (certain "statutory exceptions protect a religious entity's ability to make employment decisions—hiring or firing—for religious reasons.") (Sotomayor, J., dissenting). The Little Sisters should thus easily have First Amendment protection for the far more modest act of stepping aside from *facilitating* the use of contraceptives to those employees. That is particularly true given *Little Sisters*' recognition that the government "must accept" and was "directed" to "accommodate" that precise religious concern. *Little Sisters,* 140 S. Ct. at 2383 (brackets and internal quotation marks omitted). The district court should apply this holding to the facts in the first instance.

11

## D. All relevant questions would benefit from development in the district court.

All the district court has decided thus far has been under the preliminary injunction standard, in which the court made a preliminary judgment, "for the time being" based on its "balance" of the likelihood of success. 351 F. Supp. 3d at 1299. Now that the Supreme Court has invalidated the district court's analysis on the likelihood of success on the merits, the best route would be to send this case to the district court to proceed to final resolution in light of *Little Sisters*. That course would ideally allow this Court to review this case just one more time, and to do so after the district court has issued a final judgment.

## CONCLUSION

This Court should follow the Third Circuit in reversing and remanding to the district court to apply *Little Sisters* in the first instance.

Respectfully submitted this 28th day of August 2020,

    /s/ *Mark L. Rienzi*
Mark L. Rienzi
Eric C. Rassbach
Lori H. Windham
Diana M. Verm
Chris Pagliarella
The Becket Fund for Religious Liberty
1200 New Hampshire Ave NW,
Ste. 700
Washington, D.C. 20036
(202) 995-0095
*mrienzi@becketlaw.org*
*Attorneys for Intervenor-Defendant-Appellant*

# CERTIFICATE OF COMPLIANCE PURSUANT TO 9TH CIRCUIT RULE 32-1

I certify that:

This supplemental brief submitted pursuant to the Court's order of August 13, 2020, is not governed by the length limits permitted by Ninth Circuit Rule 32-1, but is instead governed by the August 13, 2020 order, prescribing a length limit of 15 pages, or 4,200 words in a proportionally spaced brief, in accordance with Ninth Circuit Rule 32-3(2).

The brief is proportionally spaced and is 2,797 words, excluding the portions exempted by Fed. R. App. P. 32(f). The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

/s/ *Mark L. Rienzi*

Mark L. Rienzi
1200 New Hampshire Ave NW, Ste. 700
Washington, D.C. 20036
(202) 995-0095
*mrienzi@becketlaw.org*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on August 28, 2020.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Mark L. Rienzi*

Mark L. Rienzi
*Counsel for Intervenor-Defendant-Appellant*